And we will move to our second case, which is 19-11, 795 Pine Mountain Preserve versus the Commissioner of Internal Revenue. I show Mr. Wooldridge here for Pine Mountain and Mr. Christensen here for the Commissioner. Mr. Wooldridge is up first. Mr. Wooldridge, you have reserved three minutes for rebuttal. Thank you, Your Honor. Your Honors, and may it please the Court, my name is David Wooldridge for Pine Mountain Preserve. Pine Mountain granted a conservation easement in each of 2005, 6, and 7 on 1,200 acres in the southern suburbs of Birmingham near Highway 280. Most were on the mountain ridge and slopes of Pine Mountain facing the Coosa River Valley. The values Pine Mountain deducted were validated by the trial judge in the tax court's value opinion. Nevertheless, the Commissioner has disallowed all of the deduction for each of the easements, except as modified by the tax court's opinion below. The appeal involves, first, an interpretation of a phrase in the tax code that touches on all three easements, and second, the manner in which the tax court determined the value of the 2007 easement. I'll address the statutory interpretation first. Congress revamped the deduction for conservation easements in 1980, and it created three categories of property interests that may qualify for a charitable deduction of a conservation donation. The third category, Section 170H2C, includes conservation easements and similar property interests. I would direct the court's attention to the language of this phrase in H2C, a restriction granted in perpetuity on the use that may be made of the real property. The legislative history here indicates that this was merely an expansion of an existing category. This is Judge Newsom. Can I ask you a question before we head down into the rabbit hole of legislative history? Can I just ask you a couple of questions about the language of the statute? Certainly. First, the parenthetical phrase granted in perpetuity, I guess when I read that, I took it to mean perpetuity in the property law sense, and I have vague recollections of my first year of law school. I guess I took that to mean that it was an interest in property that didn't revert to the grantor by operation of the deed itself, that that was all it really meant by perpetuity. Is there something more connoted by perpetuity than that ordinary property law concept? No, Your Honor. I think you're correct. It is property law perpetuity. It is forever. These restrictions do not lapse ever. One thousand years from now, whoever is enforcing this easement, the successor to the current land trust, presumably, would still be enforcing these restrictions and so on and so on. And so the second question I have about the language is, it simply refers to a restriction, singular, a restriction, on the use which may be made of the real property. I guess I took the real property to mean the entire parcel, the easement itself, in gross, and a restriction to mean a single restriction. Now, I'll confess that that doesn't sound like it requires much for something to be a conservation easement, but is there something more stringent that the language requires than that? No, Your Honor. And you've touched on exactly what was my next point. A restriction is, in contrast to the real property, the Fourth Circuit in Belk based its opinion on the definite article, the. And it says the real property means the real property. The property that's originally donated has to be the property on which the restrictions apply in perpetuity, a single immutable parcel. I would ask the Court to focus on the A, which is an indefinite article, and assume that Congress meant what it said, simply a course by the legislative history, but a category of property interests without differentiation or simply a category of things called restrictions on use of property. The quality of the restrictions and their effectiveness in protecting the conservation purposes is tested under a different section, 170 H5A, which requires that the purposes be protected in perpetuity and also by the creation in 1980 of the role of the land trust in enforcing the easement. At the same time that Congress adopted this phrase, it also created this role of the commissioner, required it to have the commitment and means and equipment means to enforce the easement. It requires it to be given the tools necessary to enforce the easement by injunction even so far as to restore the property to its original condition. So your point, just so I understand the operation of the two provisions at issue, is that what I'll call the granted in perpetuity requirement of 170 H2, it is actually pretty minimal. The barrier to entry, I guess, to this whole apparatus is pretty low. But then there is some substantive testing that occurs at the secondary protected in perpetuity phase, the statutory citations to which I've now referred, which is 170 H5A or whatever it is. Do I sort of have that basically right? That's correct. Okay. That's correct. And counsel, this is Lisa Branch and I understand the point that you're making that these two drilling down for a second on 2C, which is the first time that we're going to see the granted in perpetuity phrase. What is the restriction granted in perpetuity that we should be looking at here, according to you? According to me, Your Honor, 2C does not inform you to look at any particular restriction. It is merely a category of real property interest. Something like an easement. And that's all that Congress intended it to be. It expanded the general category of an easement granted in perpetuity with a more general category. We called it a more general category of restriction granted in perpetuity. There's no indication that particularly when it was creating in the same statute, a separate section that requires the restrictions and the enforcement to protect the conservation purposes in perpetuity. So 2C is the sort of the baseline that there, in this case, there is an easement that's been granted in perpetuity. So it's perhaps 2C. Is that correct? Yes, Your Honor. And let me ask you a question about 5A, moving to the more technical in perpetuity clause, the conservation purpose provision. The tax court didn't address 5A. If we were to agree with you to your point about the easements and 2C, would we reach, can we reach the 5A issue, which is so highly technical? I believe you can, Your Honor. Although I agree that the court below did not reach the issue, felt it did not need to, because the satisfaction of 170H5A is on the same basis and relies on the same terms of the easement and the statute. In this sense, the fundamental protection of the conservation purposes under 5A is the enforcement by the land trust. And if it's given adequate enforcement and required to not do anything that materially adversely affects the conservation purposes, then Congress intended it to be trusted to do its job or for the IRS to come back and take issue with the land trust. Recognizing that these things go forward in perpetuity 300 years from now, whatever the Internal Revenue Service looks at today is going to be completely different at that point in time. But the land trust will always be there or its successor to enforce the easements, so that those same protections that we'll deal with, I guess, in more substance on the- One minute, warning counsel. Okay. Protect, also satisfy 175A, H5A. Okay. That hasn't been extensively briefed to this court, Your Honor. And although I think it could be done, I've anticipated that there would be a remand on that issue so that it could be processed and it might, in fact, result in a second appeal, because the issues are similar. Yeah, that's what I was getting at, is would we need to remand it if we were to agree with you on H2C? Correct. Congress, well, the restrictions being simply a category of real property interest undifferentiated as far as 2C is concerned, H2C, suggest that the easement is not a bunch of independent separate restrictions, each of which needs to be tested in H2C as it relates to the real property. The easement is a whole document. It contains- The document has expired. All right. So you can finish your sentence. Just please wrap it up. The whole easement consists of various restrictions, exceptions to restrictions, and exceptions to the exceptions. And that entire package is the easement that has to be perpetual. Thank you, Your Honor. Thank you very much. You've reserved three minutes. We'll give you the full three. Mr. Christensen for the Commissioner. Thank you. And may it please the Court, Jacob Christensen for the Commissioner. I would like to address, again, this issue of statutory interpretation with respect to paragraph H2C and some of the Court's questions. It's important not to ignore the full statutory language. We've spoken for a moment on what is the meaning of a restriction granted in perpetuity, but we have to- The statutory language goes on. It's a restriction granted in perpetuity on the use which may be made of the real property. And it's important not to ignore that language or to render it superfluous in any interpretation that we give to this paragraph. So prior to this statute being enacted- I'm going to address the meaning of a restriction, which was one of the Court's questions. Prior to this statute being enacted, there were different categories that were covered by the statute, which included a lease on an option to purchase or an easement on real property. And Congress modified that language and replaced it with a general category covering a restriction granted in perpetuity on the use which may be made of the real property. And in the legislative history, the Senate report explains that this new language would cover easements and other interests in real property that under state property laws have similar attributes like a restrictive covenant. And so when the statute refers to a restriction, it's referring to an easement or a restrictive covenant and not something finer like simply a restriction on a use that may be made of the real property. And so what the statute is doing is it says there must be an easement, a restrictive covenant that's granted in perpetuity on the use which may be made of the real property. And... So to this point, Mr. Christensen, I think, and he can correct me on rebuttal, this is Judge Newsom, but I think that you and Mr. Woodridge are shoulder to shoulder. Because I think he was saying basically, don't read a restriction in too granular a fashion. It really just means this category of interests like easements. Yes. Right? So I mean, so far, you guys are hitting love. Yes. And so at the time the easement is granted, it places... It defines the... Not only does it define the real property that's subject to the easement, but it defines the use which may be made of the real property. And I think it's significant that the statute specifically refers to the use which may be made of the real property, not a use or any use. It's, again, the definite article. It's a restriction on the use which may be made of the real property. And so the use which may be made of the real property is defined at the outset when the easement is granted. In this case, the use that is originally granted in the easement precludes, for example, residential development. But it later allows, through a modification provision, the easement holder and the owners to remove and lift that restriction. Therefore, the use which may be made of the real property as originally granted has changed. But hold on. So tell me what I'm missing. This is Judge Newsom. So a restriction granted in the use. But I would have thought sort of ex ante. I own the piece of property. I can use it however I want to. If I want to build, you know, subject to environmental permits, if I want to build an oil well on it, I can. And so by granting this easement, I prevent myself from doing that. So why is that not a restriction on the use which, you know, sort of parenthetically, ordinarily would have been able to be made on the real property? It would be. And what I'm saying is the use is it collectively includes all of the prohibitions granted by the easement. So let's say the easement prevents residential development and it prevents the dumping of trash. Well, the use which may be made of the real property under the terms of the statute would prohibit the owner from dumping trash and from residential construction. Both of those collective points. If you remove one of those later through an amendment to the easement, well, now you've changed the use that may be made of the real property. And again, I think that it's significant that the statute refers to the use and it uses the definite article rather than a use. So, Mr. Christensen, I'm sorry, this is Judge Newsom. I hate to be a dunce, but I just need a little bit of help because I think, you know, you may be onto something here, but I may not be understanding it. So I would have thought that ex-ante at time zero, just before the granting of the easement, that the use which may be made of the real property was infinite. It's mine. I can do with it whatever I want to. When I grant the easement, the conservation easement, now I have placed on it a restriction granted in perpetuity on that earlier use. But I don't see how the easement then sort of micromanages sort of the easement itself. Does that make sense? I guess what I'm saying is it wouldn't be, you know, if the easement at the time it's granted, it defines, you know, the use that may be made of the property. And that's done. I guess my point is like, that's done. It's been done. The constructive easement has been granted. And I guess Mr. Woodridge's point is, okay, we've passed through H2C and now we're on to H5A. I see. I see. So what I'm saying is if the use which may be made of the real property is subject to change, in other words, now, you know, there's a restriction on dumping trash and on residential construction. But if that use is subject to change and you can remove the restriction on residential construction, then the use which may be made of the real property as originally granted by the easement was not granted in perpetuity as demonstrated by the fact that the use which may be made of the real property is now different than it was at the time that the easement was granted. And that's the reason that it violates the granted in perpetuity requirement. The easements in this case, originally, they restricted residential development and numerous other uses of the property. But the provisions allow the owner and Pine Mountain and NALT to later remove part of that restriction on the use which may be made of the real property. Counselor, this is Judge Ray. I want to, if I can, challenge that point. I mean, I understand your point that there may be property that was subject to one of the easements that was restricted that might become unrestricted, at least as it relates to homeowner construction. But wasn't that contemplated from the very beginning? For example, you know, one of the easements exempted out a certain number of lots. The other easement didn't identify the lots, but it exempted out or reserved lots for construction of homes. And that would have affected the value of the easements at the very beginning of the process, wouldn't it? Yeah. And the problem with that is that the IRS simply has no way at the time that the easement is granted of determining compliance with the perpetuity requirements because it doesn't know where on the property this residential construction is going to be made. And so, one of the purposes of H2C, it has two purposes. First, it defines the real property that is subject to the easement, the specific tract of land. But second, it defines the use that may be made of that property perpetually. Well, so let me follow up with that point. I mean, the commissioner seems to minimize the fact that all of the property is going to, even the home site parcels are going to be subject to restrictive covenants no matter what. Isn't that right? I mean, you don't believe that the home sites have any meaningful restrictions. Right. But they do, don't they? I mean, they can't be for commercial property. They can't be, I think you guys used some mining or something earlier. I mean, those types of things can't be. The argument that the commissioner makes is, well, they were never going to happen to start with. But I mean, we don't know that. I mean, things change. I live in a part of Atlanta that when I moved here 30 years ago was 80% farmland and now it's 95% urban. So, things do change every time, don't they? Yeah, your honor. And I take your point. We're not remain at all. I mean, theoretically, there are restrictions left intact. The problem is that the use that may be made of the real property has now changed. And that is the key point under section H2C that the tax court pointed out is that by permitting the home site parcels to be relocated to other sections of the conservation area, the deed allows the developer to subject to residential development land that was supposed to be protected in perpetuity from any form of development. And it's that change in the use. I mean, at the beginning, there were robust restrictions on the use. And that use was defined in the easement at the time it was granted. So, I understand the Fourth Circuit's decision in Belk where you had completely new property being swapped out. But this case is more like the Fifth Circuit case, isn't it, where it was just parcels within the overall property that was changed in some regards? It does resemble the Fifth Circuit in that case, yes. And we've explained in our brief that it's really irrelevant whether... It shouldn't make a difference whether the substituted property is inside or outside the exterior boundaries of the easement itself. And so, we think that, you know, the tax court was right here to apply the reasoning of Belk to this situation. But again, it's the change in the use that may be made of the real property. You know, even if there theoretically are restrictions that remain on these home sites, the original protection that was granted has been changed. And so, by definition, that original restriction on the use which may be made of the real property was not granted in perpetuity because it has changed. Mr. Christensen, this is Lisa Branch. Let me push back a little bit on that. Looking at 2C, aren't you reading... It starts off with a restriction. Aren't you necessarily reading all restrictions? Well, I think that's what... For instance, perpetuity, because you have conceded that restrictions remain. So, if the easement itself still remains, why is that not enough to satisfy a restriction? So, Your Honor, you're exactly right. We are referring to all the restrictions. And we think that is the effect that the language, the use, which may be made of the real property has. The effect of that language, the use, with the use of the definite article, it defines collectively all the restrictions on the use of the real property. By the way, paragraph H5A does not even... H5A, the second perpetuity requirement, does not even reference the use which may be made of the real property. And so, to say that the use that may be made of the real property is governed by H5A doesn't make any sense based on the statutory language. It's H2C that defines the use which may be made of the real property. And that includes all of the collective restrictions granted at the outset by the easement, which must be granted in perpetuity. So, if some of those restrictions or the prohibitions on the use which may be made of the real property are later lifted, even though perhaps leaving some intact, then the use has changed and therefore was not, by definition, was not granted in perpetuity at the outset because it allows it to be changed. All right, Mr. Christianson, this is Judge Newsom. I've got a couple more for you. One, how do you distinguish the 07 easement which had a movable, if you will, water tower? You say that's fine. From the 05 and 06, which you say had movable home sites, which you say are not fine? Yes, Your Honor. I think the tax court really viewed the single, you know, the construction of a single water tower as de minimis under this analysis. And that's why, you know, if... But on the language of the statute, like what's the principle that distinguishes those two things? Because I really took you to be saying a few minutes ago in response to questions that, in effect, any amendment causes the easement no longer to be the easement. No, Your Honor. What I meant to say, and I didn't mean to convey that, I'm... Again, the statute refers to the use which may be made of the real property. And so I'm specifically referring to an amendment of the restrictions on the use which may be made of the real property. But, I mean, isn't the water tower also an amendment on the restrictions of the use? I... Why any less so than home sites, except in a quantitative sense? Yeah, I do think that there's a qualitative difference. And I think that the tax court just viewed the water tower as de minimis. Again, you know, the law doesn't concern itself with trifles. And that principle, I think, would apply here. But so your baseline position is that any amendment to the uses to which the property can be made, that is, any non-de minimis amendment to the uses to which the property may be made, disentitles something to treatment under this statute. Well, yes, if... With the caveat that if it is reducing the protection, you know, if it's lifting the restrictions on the use, an amendment that enhances the protection by adding restrictions would not violate the perpetuity requirement. All right. So last question from me is this. If you have to be able to determine ex ante whether or not a conservation easement qualifies, how could you ever possibly know? Because doesn't... I mean, doesn't... Won't every one of these, whether it says so or not, be subject to bilateral amendment down the road? So that raises a good point, Your Honor. The, you know, taxpayers... Congress made this clear in the legislative history for the statute, that taxpayers contemplating a donation of a conservation easement can always request a prior administrative ruling from the IRS, whether their contemplated donation will qualify. And, you know, Pine Mountain, for whatever reason, chose not to do that here, and instead has relied on private letter rulings issued to other taxpayers, which the code prohibits it from doing. But Congress, you know, in the legislative history explains... You can finish up. I was just going to say that the legislative history explains, you know, that Congress contemplated that taxpayers would be able to seek prior administrative rulings. And again, you know, it's not... The commissioner does not take the position that any amendment to the easement will disqualify it under the perpetuity requirements, you know, protection enhancing amendments are certainly permissible, as we've explained in our brief. Okay. So I've monopolized some of your time. Judge Branch, Judge Ray, do you guys have additional questions? I do not. No. Okay. Mr. Christensen, thank you so much. Thank you. Mr. Wooldridge, you've got three minutes remaining. Thank you, Your Honor. David Wooldridge for Pine Mountain. I would say that, going back to this notion of a change in use, that the commissioner is trying to divide up this easement that's granted into separate, discrete little parts and pick the ones they restriction. The entire document creates restrictions with exceptions, with exceptions to the exceptions. I think it would be accurate to say that, well, first, the easements do not say anything about development. What the easements restrict is any structures on the property. And then it then creates a series of exceptions that it allows for structures, the water tower, for instance, a pond, and these home sites. It is more accurate to say that the easement restricts structures less than except the 10 structures permitted. And that use never changes. I've oversimplified the example, but essentially, by stopping at the no structures and saying that's what was restricted and everything else is somehow surplusage or an afterthought is simply a very look at a document that was intended for a particular result and contains all of these various clauses. I think there is no change in the use allowed by the easement. All of the uses that we're talking about are allowed. It's like a deed that says, I give you this 40 acres less than except the southeast corner acre. The deed conveys 49 acres. It doesn't convey 50 acres and then you say, well, you took back the other acre. There was no taking back. There was no change. It was what it was to begin with. The idea that the IRS has to determine where on the property the home sites are is simply not true, nor does it make any sense. The appraisal does not need to know where the property is. The sites are assumed to be in their highest and best use, most valuable place. The baseline covers the entire property. The entire property would be reviewed and inspected by the IRS if it chose to go out there and do it, knowing that the home sites would be placed somewhere. If there are no restrictions on where the home sites could be placed, then that would be problematic under H5A and that's one of the issues that would be in the I would suggest that the required approval by the land trust for the location with the stipulation that it can only do so if it has no material adverse effect on the conservation purposes is sufficient to protect the conservation purposes. That's exactly what Congress... I see your argument has expired. Okay. All right, Mr. Walters, thank you so much. Mr. Christensen as well. That case is submitted and we are in recess until 9 a.m. tomorrow morning. Thank you, Ron. Thank you, everyone.